Hillsborough
No. 7421

STATE OF NEW HAMPSHIRE

v.

ROBERT E. STEWART

September 30, 1976

*David H. Souter,* attorney general, and *Robert V. Johnson II,* assistant attorney general *(Mr. Johnson* orally), for the State.

*Arthur M. Connelly,* by brief and orally, for the defendant.

LAMPRON, J.   Defendant was indicted on four separate charges of attempted murder. RSA 629:1 and RSA 630:1. These offenses were alleged to have occurred on December 23, 1973. After a trial by jury before *Keller,* C.J., the defendant was found guilty on two indictments. Defendant's exceptions taken during the course of the trial and to the denial of his motions for mistrial and to set aside the verdicts were reserved and transferred.

The two issues on this appeal are whether the trial court erred (1) in denying defendant's motion for a mistrial because certain pretrial publicity precluded a fair trial by an impartial jury, and (2) in refusing to allow admission in evidence of the results of a polygraph examination which the defendant offered to undergo.

There was evidence that in the morning of December 23, 1973,

Officer Pigeon of the Manchester Police Department observed a motor vehicle "wanted for investigation". Officer Davis arrived on the scene with a police cruiser. Stewart then entered the observed vehicle and the officers stopped it. However, the defendant jumped out of his vehicle and started to run. Officer Pigeon ordered him to stop and fired a warning shot straight up in the air, but Stewart kept running. The officers gave chase on foot. The defendant who had a revolver fired a shot at Officer Davis. Stewart then stole a taxi cab and was pursued by police cruisers. He was stopped in Bedford at which time he fired at least one shot at Officer Rule. Defendant managed to escape and evade the police cruisers and abandoned the cab in a wooded area in the town of Bedford. Stewart was subsequently located and arrested on January 23, 1974 at Hooksett. He was found guilty of the attempted murder of Officers Davis and Rule, similar charges pertaining to Officers Landry and Durette were removed from consideration by the jury.

Defendant states in his brief that from December 23, 1973, he immediately became the subject of continuous and widespread coverage by "all factions of the news media" which continued up to and during his trial which started May 20, 1974, about five months after his arrest. These stories detailed the events of his arrest, his past history of prior criminal activities and referred to an attempted holdup of an armored car in Manchester on December 21, 1973, in the course of which a security guard was wounded.

Two exhibits were presented on this issue and marked for identification. The first was a copy of the Manchester Union Leader of Wednesday, May 22, 1974, which carried the defendant's picture on the front page with headlines referring to the trial in progress. There was also an "exclusive interview" with the defendant pertaining to how he evaded the police on December 23, 1973. The second was a script used in a radio broadcast which referred to the selection of a jury for the trial, the high-speed chase of the defendant on December 23, 1973, and stated that Stewart had been "the object of one of the State's most intensive manhunts following a pre-Christmas downtown armored car holdup in Manchester." However the script also stated that Stewart "has not been charged with the attempted holdup . . . ."

"Publicity about a case can result in two types of prejudice with regard to the accused's right to a fair trial. The first is inherent

prejudice which exists when the publicity by its nature has so tainted the trial atmosphere that it will necessarily result in lack of due process. In such cases the defendant need not show actual identifiable prejudice.... The second is actual prejudice which exists when the publicity has infected the jurors to such an extent that the defendant cannot or has not received a fair and impartial jury trial." *State v. Laaman,* 114 N.H. 794, 798, 331 A.2d 354, 357 (1974), *cert. denied,* 423 U.S. 854 (1975). On the record before us we hold that the media publicity complained of in this case was not in its character and intensity so "massive, pervasive and prejudicial" as to create inherent prejudice thus preventing the defendant from receiving a fair trial consistent with due process. *Id.* at 799, 331 A.2d at 357; *cf. Sheppard v. Maxwell,* 384 U.S. 333 (1966); *Rideau v. Louisiana,* 373 U.S. 723 (1963).

Absent inherent prejudice, the defendant must prove that the adverse publicity resulted in the jury not being free from the dominant influence of knowledge acquired outside the courtroom thus creating a reasonable likelihood that defendant did not receive a fair trial. Whether or not the required impartiality of a juror has been affected by the publicity to such an extent that he or she cannot render a verdict based on the evidence presented in court is to be determined in the first instance by the trial court on *voir dire. State v. Rheaume,* 80 N.H. 319, 320, 116 A. 758, 760 (1922); *Irvin v. Dowd,* 366 U.S. 717, 722-23 (1961); RSA 500-A:22 (Supp. 1975).

When during the trial the alleged prejudicial publicity was brought to the attention of the trial court as a ground for a mistrial, the court immediately conducted a *voir dire* of each juror relative to his or her exposure to the publicity and its effect if any. After having been called and interrogated by the court, a juror was not permitted to join the other jurors until all had been separately questioned. Each juror testified that he or she had not been influenced or prejudiced in any manner by what he or she might have heard or read.

We have reviewed the transcript of the *voir dire* conducted by the trial court and hold that the court acted carefully and competently and properly found that the members of the jury on their own statements met the standards established for a fair and impartial jury. RSA 500-A:22 (Supp. 1975). In order to further insure that the defendant receive a fair and impartial trial, the court instructed the jury that "this case is to be decided solely upon the evidence which is presented here in this Court Room,

and anything that may have been said or written outside of the Court Room [is not] to be taken into consideration by you." Furthermore the jury was sequestered for the remainder of the trial. Defendant's motion for a mistrial was properly denied. *See* RSA 500-A:22 (Supp. 1975); ABA Standards, Fair Trial and Free Press § 3.4 (1968).

Defendant also maintains that the trial court committed reversible error in ruling that the results of a polygraph test are not admissible unless the parties agree on it. *See State v. LaForest,* 106 N.H. 159, 161, 207 A.2d 429, 431 (1965). The State refused to do so. No such test was taken by the defendant. His counsel stated to the trial court that he was not prepared to offer expert medical evidence concerning the physical and psychological aspects of such a test or evidence from a qualified examiner relating to the manner in which such a test was administered. *See State v. Valdez,* 91 Ariz. 274, 283, 371 P.2d 894, 900 (1962).

A polygraph machine has been described as "a scientific device which through measurement and recording of involuntary bodily responses — blood pressure, pulse rate, respiration, and skin resistance to electricity — seeks to determine whether an individual is telling the truth." *Commonwealth v. A Juvenile (No. 1),* 1974 Mass. Adv. Sh. 907, 313 N.E.2d 120, 124; *see* Annot., 53 A.L.R.3d 1005, 1007 (1973). It is not an instrument which automatically and unerringly discloses a lie by the person being tested. *See* Annot., 23 A.L.R.2d 1306, 1307 (1952). The ability of the operator by training and experience to interpret the resultant recorded curves is essential to the accuracy of the conclusions arrived at. Note, *The Emergence Of The Polygraph At Trial,* 73 Colum. L. Rev. 1120, 1124 (1973); Forkosch, *The Lie Detector And Mechanical Jurisprudence,* 28 Okla. L. Rev. 288, 300-01 (1975).

This court stated in *State v. LaForest,* 106 N.H. 159, 160, 207 A.2d 429, 430 (1965), that "the results of these tests have been rejected by courts as evidence of guilt or innocence of the accused by the overwhelming weight of judicial authority on the ground that these tests have not yet attained sufficient scientific acceptance as an accurate and reliable means of ascertaining truth or deception." *See Frye v. United States,* 293 F. 1013 (D.C. Cir. 1923); *Commonwealth v. Fatalo,* 346 Mass. 266, 191 N.E.2d 479 (1963). This position still prevails in many jurisdictions. *State v. Steinmark,* 195 Neb. 545, 239 N.W.2d 495 (1976); 29 Am. Jur. 2d *Evidence* § 831 (1967); Annot., 53 A.L.R.3d 1005 (1973); 3A J. Wigmore, Evidence § 999 (Chadbourn rev. 1970).

While maintaining that polygraph tests should not be subject to the same rules of evidence applicable to other forms of acceptable expert scientific evidence, the Supreme Judicial Court of Massachusetts, in a four-three opinion, arrived at the following holding in *Commonwealth v. A Juvenile (No. 1)*, 1974 Mass. Adv. Sh. 907, 313 N.E.2d 120, 124. "[I]f a defendant agrees in advance to the admission of the results of a polygraph test regardless of their outcome, the trial judge, after a close and searching inquiry into the qualifications of the examiner, the fitness of the defendant for such examination, and the methods utilized in conducting the tests, may, in the proper exercise of his discretion, admit the results, not as binding or conclusive evidence, but to be considered with all other evidence as to innocence or guilt. As a prerequisite the judge would first make sure that the defendant's constitutional rights are fully protected." However, such testimony is to be received "[o]nly under sharply defined and limited circumstances and conditions." *Id.* at 128. This holding was criticized in two dissenting opinions and has been commented on adversely in 9 Suffolk U.L. Rev. 886-902 (1975).

Whether or not this court would arrive at the same results under similar circumstances should be decided only when such a case is presented and considered on its merits. *State v. LaForest*, 106 N.H. 159, 161, 207 A.2d 429, 431 (1965). On the record before us we hold that the trial court properly held that the results of a polygraph test which might be offered by the defendant would not be admissible.

*Exceptions overruled.*

GRIMES, J., did not sit; the others concurred.