Hillsborough
No. 79-032

THE STATE OF NEW HAMPSHIRE

v.

LOUISE FRENCH, a/k/a

LOUISE MURPHY

June 27, 1979

*Thomas D. Rath*, attorney general (*John C. Boeckeler*, assistant attorney general, orally), for the State.

*Holland & Aivalikles*, of Nashua (*Francis G. Holland* orally), for the defendant.

GRIMES, J. The issue in this murder case is whether it was error for the trial court to exclude evidence that the defendant had undergone a polygraph test at the request of the State and that the State's polygraph operator and eight other police operators were of the opinion that the defendant had been truthful when she denied killing the victim. We hold that no error was committed.

Defendant was indicted in April 1977 for the murder of John Dufresne on September 15, 1975. RSA 630:1-b I (a). Trial began on October 11, 1977. During trial, defendant moved to suppress certain evidence including statements made by her to the police, and a .22 caliber revolver found in her van during a consent search. It was claimed that the consent and the statements were given because of a promise by the police that if she passed a polygraph test, no action would be brought against her. She asked that the evidence be suppressed, and in the alternative, that the results of the polygraph test be admitted. The court denied the motion to suppress and ruled that the results of the test would not be admitted. During the course of the trial, the test was inadvertently mentioned and a mistrial was declared by *Mullavey*, J.

A new trial began on April 17, 1978, and defendant again moved to have the results of the polygraph test admitted. After a hearing, the request was denied. The trial court indicated, however, that had it not felt bound by the prior ruling, it would have admitted the polygraph evidence. The trial ended in a verdict of murder in the second degree, and defendant's exceptions were transferred by *Loughlin*, J.

The victim was shot five times in the back just after midnight on the morning of September 15, 1975, at Green's Pond Road in Merrimack, New Hampshire. He frequented the Merrimack V.F.W. Post, of which he was a founder. He drank heavily and pestered women, but was nevertheless tolerated because of his status as a founder.

Defendant also frequented the club and was friendly with a John Stiles, who was seen patting defendant affectionately at the club on the evening of September 14, 1975. Stiles was an ex-military ordinance specialist and he and the defendant, who owned a .22 caliber revolver, often shot at targets at Green's Pond where the victim was found. The victim was also attentive to the defendant, and this unwanted attention was a cause of embarrassment to her. On the evening of September 14, Stiles had demanded that the victim be ejected from the club and removed from membership.

On the evening of September 15, 1975, defendant and Stiles went to the Merrimack police station at the request of the police. Defendant was asked to submit to a polygraph test and to turn over her gun for a

ballistics test. After consulting with Stiles, she consented to both and on the sixteenth went to Concord for the polygraph examination. Two police detectives, two State troopers, and a representative of the attorney general were present. When she was informed that she would be asked about her knowledge of others than herself being involved with the crime, she refused to continue the test.

■ On September 19, Detective Horak called defendant to tell her that the test of her gun indicated that the fatal shots were fired from it. He then convinced her to take the polygraph examination. The trial court did not find, and a review of the evidence does not show, that there was any promise not to prosecute her if she passed the test. The closest that defendant can come to such evidence is that Detective Horak told her "that if she did, it might help to straighten out some matters." This falls short of a promise not to prosecute which, if made, might create a serious obstacle to the prosecution if she passed the test. *See Adler v. Court of Common Pleas,*—Ohio App. Ct.—, March 27, 1979, 25 Crim. L. Rep. 2105 (May 2, 1979); *cf. Killough v. United States,* 119 U.S. App. D.C. 10, 336 F.2d 929 (1964) (holding inadmissible the defendant's statements made during routine classification questioning).

In the opinion of the polygraph operator who gave the test and eight other police operators who reviewed the readings, defendant was truthful when she denied having fired any of the shots that killed the victim, but was deceptive when she denied knowing who did. They believed she was also truthful when she stated that she had taken the victim to his home on the night in question.

Defendant's gun had interchangeable cylinders, one for standard ammunition, the other for magnum. The magnum was in the revolver on September 14, according to testimony, and it was locked in her van at the V.F.W. along with the other cylinder, ammunition, and other items. When Detective Horak searched the van the next evening, however, the standard cylinder was in the revolver and the magnum cylinder was in a cloth bag. She claimed that she kept the van locked at all times because it was used as her home. There was evidence that defendant did not go to work the morning of September 15, 1975, but visited a friend who stated that she seemed frightened and depressed and "wasn't herself."

Defendant does not urge us to rule that the results of polygraph examinations should generally be allowed in evidence, but argues that the fact of the examination and its results should have been permitted due to the special circumstances of this case.

The polygraph, contrary to popular belief, is not a "lie" detector. *State v. Stewart*, 116 N.H. 585, 588, 364 A.2d 621, 623 (1976). *See generally* Abbell, *Polygraph Evidence: The Case Against Admissibility in Federal Criminal Trials*, 15 AM. CRIM. L. REV. 29, 33–50 (1977). Rather, it is a mechanical device that only measures and records certain involuntary physiological responses to interrogation. *State v. Stewart*, 116 N.H. at 588, 364 A.2d at 623. The recorded responses are then "interpreted" by the polygraph operator as to whether the indicated changes were caused by attempted deception or something else. *See* STAFF OF SUBCOMM. ON CONSTITUTIONAL RIGHTS OF THE SENATE COMM. ON THE JUDICIARY, 93d CONG., 2d SESS., REPORT ON PRIVACY, POLYGRAPHS, AND EMPLOYMENT 5–9 (Comm. Print 1974). *See generally* J. REID & F. INBAU, TRUTH AND DECEPTION: THE POLYGRAPH ("LIE–DETECTOR" TECHNIQUE) (2d ed. 1977). The interpretation, however, is solely the opinion of the operator; and considering the multitude of variables involved, the risks of error are substantial. *Accord, State v. Cook*, 574 P.2d 1073, 1074 (Okla. Crim. App. 1978); *Commonwealth v. Gee*, 467 Pa. 123, 354 A.2d 875 (1976). The difficulties of dispelling the myth of scientific infallibility would make the use of the evidence extremely dangerous.

■ This court has steadfastly adhered to the view that the results of polygraph tests are generally inadmissible "as evidence of guilt or innocence of the accused." *State v. Stewart*, 116 N.H. at 588, 364 A.2d at 623, *quoting State v. LaForest*, 106 N.H. 159, 160, 207 A.2d 429, 430 (1965). To our knowledge, this is still the overwhelming majority rule, although some courts admit such evidence by prior stipulation. *See* 3 F. WHARTON, CRIMINAL EVIDENCE § 630 (C. Torcia 13th ed. 1973); Annot., 53 A.L.R.3d 1005 (1973). Despite opinion to the contrary, *see, e.g.*, C. MCCORMICK, LAW OF EVIDENCE § 203, at 491 (2d ed. 1972), we have no present intention of departing from the general rule of inadmissibility. Nor need we in the present case decide whether, by stipulation, polygraph results can be admitted. *See State v. Stewart supra.* Even assuming that complete accuracy could be achieved, the use of polygraph evidence will still present privacy and self-incrimination problems, as well as the question whether our society wishes to subject itself to this form of judgment. *See Schmerber v. California*, 384 U.S. 757, 764 (1966).

Defendant argues, however, that exclusion of the polygraph evidence in her case resulted in an unfair trial, a denial of due process, and a denial of the right of confrontation by limiting the scope of cross-examination. Defendant did not testify at trial, but her counsel argued that Stiles was the killer

and that the unwanted attention the victim paid defendant was the motive. Defense counsel argued that Stiles entered the picture while defendant was driving the victim home, and that Stiles shot the victim with defendant's gun. It was suggested that defendant thought Stiles had used his own gun but that somehow he had used hers and then changed the cylinder.

During the course of the trial, there was testimony that defendant had told the police that Stiles "was too good a man to do it." This was used by the prosecutor in his argument to show an inconsistency with defendant's defense that Stiles was the killer. Defendant claims that this statement was taken out of context and that her statement was made during the preliminary discussions preceding the polygraph examination. She argues that by being unable to show the circumstances under which the statement was made and the results of the test, she had been denied due process and her full rights of confrontation.

If the evidence of the statement had been brought out by the prosecutor, there might be some merit in defendant's argument. But the prosecutor carefully avoided any reference to it in questioning the witnesses; it was defendant's counsel who elicited the testimony during cross-examination. In fact, the trial justice perceived this as an improper attempt to get the polygraph evidence before the jury.

Under these circumstances, we find no denial of due process or of the right of confrontation. Nor do we find any merit in the argument that the exclusion of the polygraph evidence resulted in unfairly limiting cross-examination in other areas. We therefore hold that no error was committed in excluding the evidence.

*Exceptions overruled.*

DOUGLAS, J., dissented; the others concurred.

DOUGLAS, J., dissenting:

Although I agree with the majority that the results of polygraph tests should generally not be admitted into evidence, this case presents unique facts that warrant admission of the results. The defendant wants the examination results of her answers admitted even though they clearly indicate that she was present at the time of the shooting, knew who shot the victim, but did not kill John Dufresne herself.

The State, through its own expert, administered the test on September 19, 1975, but the defendant was not indicted until April

1977. A trial that year resulted in a mistrial and a denial of defendant's request to have the results of the September 19 test admitted. On retrial before a second judge and jury, the judge ruled that the examiner, Corporal Heon, was an expert polygraph operator and expressly stated that he was persuaded to allow in the evidence. *See State v. Dorsey*, 88 N.M. 184, 539 P.2d 204 (1975). Nevertheless, because of his predecessor's ruling excluding the results, the second judge felt that he was "in a box." Although the second judge cited *State v. Laro*, 106 N.H. 500, 213 A.2d 909 (1965), to support his ruling, that case is inapposite. I am aware of no rule or case that would have bound the second judge to the previous trial judge's ruling on this issue. The testimony presented about the polygraph, the test, and the operator constitutes the record that was lacking in *State v. Stewart*, 116 N.H. 585, 364 A.2d 621 (1976). The second judge stated that he would have admitted the evidence, but incorrectly excluded the evidence because he thought that he was bound by the prior trial judge's ruling.

The second judge's exclusion of this evidence allowed the prosecutor to summarize the evidence by pointing to some "very damaging admissions" made to the police before the September 19 examination and to claim that certain "statements are a good indication of deception" on defendant's part. The prosecutor could do this secure in the knowledge that the test taken under the supervision of his office relating to the defendant's credibility would not be presented to the jury. I would therefore reverse and remand for a new trial.