Hugh deVRIES, et al., Plaintiffs, Appellees,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant, Appellant.

No. 82–1672.

United States Court of Appeals, First Circuit.

Argued May 6, 1983.

Decided Sept. 14, 1983.

---

Eugene M. Van Loan, III, Manchester, N.H., with whom Wadleigh, Starr, Peters, Dunn & Chiesa, Manchester, N.H., was on brief, for defendant, appellant.

Bruce W. Felmly, Manchester, N.H., with whom Robert E. Jauron, and McLane, Graf, Raulerson & Middleton, P.A., Manchester, N.H., were on brief, for plaintiffs, appellees.

Before COFFIN and BREYER, Circuit Judges, and BONSAL,* Senior District Judge.

BONSAL, Senior District Judge.

The defendant, St. Paul Fire and Marine Insurance Co. ("St. Paul"), appeals from a judgment entered following a jury trial in the United States District Court for the District of New Hampshire, Devine, C.J., in favor of plaintiffs Hugh and Elizabeth deVries for $404,592.50 and in favor of Plaintiff Bubbling Brook School, Inc. for $75,000. The plaintiffs brought this diversity action to recover the proceeds of a fire insurance policy issued by St. Paul and to recover damages beyond the policy limits by reason of St. Paul's alleged bad faith in denying the plaintiffs' claim to the proceeds. The issues raised by St. Paul in this appeal are whether the district court erred in: (1) charging the jury on the issue of St. Paul's breach of its implied obligation of good faith and fair dealing, (2) denying St. Paul's motions for a directed verdict and judgment notwithstanding the verdict, and (3) excluding evidence of the plaintiffs' refusal to take a polygraph examination. Finding no error, we affirm the judgment of the district court.

## BACKGROUND

From 1978 to 1980, plaintiffs Hugh and Elizabeth deVries ran the Bubbling Brook School, a private school for disturbed adolescent males in Deerfield, New Hampshire. The deVries owned the school building, which they leased to Bubbling Brook School, Inc., a not-for-profit corporation formed by them to operate the school. A fire insurance policy purchased by the deVries from St. Paul covered the building, its

---

* Of the Southern District of New York, sitting by designation.

contents, and business interruption caused by fire damage.

On April 6, 1980, while the students were away for Easter vacation, a fire destroyed the school building. Immediately thereafter, the deVries notified St. Paul through their insurance agent and filed proofs of loss seeking the maximum amount of coverage under their policy. Investigations by St. Paul and law enforcement authorities determined that the fire was caused by arson. On July 9, 1980 the attorney conducting the investigation for St. Paul informed the deVries by letter that their claim was disallowed. In the fall of 1980, following further inquiry into the causes of the fire, St. Paul made a final determination that the deVries' proofs of loss should be rejected, on the ground that the deVries had set the fire themselves.

On February 20, 1981 the deVries filed this diversity suit for the proceeds of their insurance policy and for further damages allegedly suffered as a result of St. Paul's breach of the covenant of good faith and fair dealing implied in its contract with the plaintiffs. St. Paul's answer alleged that the plaintiffs had violated the terms of their policy by "willfully concealing and/or misrepresenting material facts . . . concerning the circumstances of the loss" and by "willfully causing or contributing to cause the loss."

On May 19, 1981 the plaintiffs filed a motion *in limine* for an order prohibiting St. Paul from introducing evidence of the deVries' refusal to take a polygraph test during the course of the investigation. St. Paul countered that such evidence should be admissible on the issue of the company's alleged bad faith in denying the plaintiffs' claim. A magistrate granted the plaintiffs' motion and the district court upheld the magistrate's decision.

Twice during the trial St. Paul moved for a directed verdict on the ground that the evidence was insufficient to find the defendant liable for acting in bad faith. The

district court denied both motions. Following the jury's return of a verdict for Mr. and Mrs. deVries in the amount of $578,-750 [1] and for the Bubbling Brook School in the amount of $75,000, St. Paul moved for judgment notwithstanding the verdict and/or a new trial. St. Paul contended that the district court had erred in charging the jury with respect to the elements to be considered in determining whether there was a breach of the company's implied obligation of good faith and fair dealing. On July 8, 1982 the district court denied St. Paul's motion, holding that its charge was consistent with the law in New Hampshire. Judgment was entered on the verdicts on July 9, 1982.

Simultaneous with the filing of this appeal, St. Paul moved this court to certify to the New Hampshire Supreme Court the question of what constitutes "bad faith" in violation of the implied covenant of good faith and fair dealing. That motion is also before us.

## DISCUSSION

### I.

St. Paul's first contention is that the district court's charge to the jury concerning the covenant of good faith and fair dealing implied in the deVries' insurance contract was erroneous. The relevant portion of the charge follows:

"If, however, you find that the defendant, St. Paul Fire & Marine Insurance Company, has failed in its burden of proof by a preponderance of the evidence, that the plaintiffs wrongfully and intentionally caused or procured the fire to be caused, then the plaintiffs would be entitled to recover on the policy, and you would then turn your attention to their second claim, which is a claim that the defendant, in its approach to adjustment of these losses, violated the obligation of good faith and fair dealing which the

1. In its order dated July 8, 1982 the district court reduced the verdict for the deVries by $174,157.50 to reflect the amount already paid

by St. Paul to the mortgagees of the damaged property.

applicable rules of law imply in every contract, including contracts of insurance.

Here the plaintiffs must prove by a preponderance of the evidence that the defendant's failure or delay to make payment under the policy to them constituted a breach of the insurance contract, for not every delay or refusal to settle or to pay a claim under the policy constitutes such a breach of the insurance contract. It is only where the acts of the insurance company investigating the claim amount to an unreasonable denial to the insured of the benefits of the policy that such breach of contract exists.

Thus only if you are satisfied that the plaintiffs have proved by a preponderance of the evidence that the acts of St. Paul Fire & Marine Insurance Company in investigating and adjusting the claim here amounted to a calculated and not inadvertent unreasonable denial of payment, may you find the insurance company to be responsible for alleged breach of the contractual obligation of good faith and fair dealing."

Pointing to the language of "reasonableness" employed by the district court, St. Paul argues that the charge failed to require evidence of malice or ill will, which it claims are necessary elements of "bad faith".

At the outset, we note that St. Paul devotes considerable space in its brief to demolishing what is essentially a straw man. It argues at length that New Hampshire, like other jurisdictions, has interpreted "bad faith" to mean more than mere negligence. Therefore, it concludes, the district court was wrong to charge that an "unreasonable" denial of the plaintiffs' claim was

sufficient to establish a breach of the covenant of good faith and fair dealing. However, a reading of the charge plainly shows that the district court never equated bad faith with negligence. The court told the jury that it could find the insurance company responsible for violating the covenant of good faith and fair dealing only if it was satisfied that St. Paul's conduct "amounted to a *calculated and not inadvertent* unreasonable denial of payment." (Emphasis added). According to the court's instructions, then, the jury had to find that St. Paul's actions were more than simply unreasonable in order for it to conclude that bad faith existed.

The record reveals that the district court chose the wording in its charge carefully. The plaintiffs' requested instruction on the good faith issue implied that negligent conduct on the part of the insurer was sufficient to constitute a breach of its implied obligation of good faith and fair dealing.[2] St. Paul's requested instruction, on the other hand, required the jury to find that the insurer's conduct had been malicious or reckless.[3] In a colloquy at the bench following the charge, the attorneys for both parties objected to the court's instruction on this issue. Counsel for the plaintiffs stated:

"In your charge with respect to the standard of bad faith, the Court, in addition to saying 'unreasonable conduct' indicated that the insured had an obligation not to have that in a calculated fashion. I don't think that's consistent. I object to that."

The Court responded: "I'm satisfied it's proper, but your objection is noted." Soon after this, counsel for St. Paul stated:

**2.** " 'Good faith' suggests honesty of intention, and freedom from [knowledge of] circumstances which ought to put the holder upon inquiry—an honest intention to abstain from taking any unconscientious advantage of another, even though technicalities of law, together with absence of all information, notice, or benefit or belief of facts which render a transaction unconscientious. Conversely, bad faith can involve a neglect or refusal to fulfill some duty or some contractual obligation, which neglect or refusal is not prompted by an honest mistake,

but by some interested or sinister motive. *Black's Law Dictionary* (rev. 4th ed.)."

**3.** "To establish the 'bad faith' of the defendant in denying their claim, the plaintiffs must prove that the defendant did more than simply make a mistake; the plaintiffs must prove that the defendant acted out of malice towards the plaintiffs or with reckless disregard of the facts reasonably known to the defendant."

"I specifically take objection to the failure of the Court to give my several written requests regarding the bad faith claim in which bad faith is defined as being something more than simply negligent, or, as the Court indicated unreasonable conduct, and in particular the failure of the Court to add some mental element to the content of bad faith, and that being some element of insincerity and malice."

The court replied: "That's why I used the terms calculated and inadvertent, but I don't think you're entitled to malicious." Thus, the court deliberately chose a standard in between negligence and malice.

■ We think that the charge conformed with the law of New Hampshire. Under New Hampshire law there is implied in every contract an obligation of good faith and fair dealing. *Bursey v. Clement,* 118 N.H. 412, 414, 387 A.2d 346, 347–48 (1978). In *Lawton v. Great Southwest Fire Insurance Co.,* 118 N.H. 607, 392 A.2d 576 (1978), the New Hampshire Supreme Court expressly held that an obligation of good faith and fair dealing is implied in a first-party insurance contract of the kind at issue here. An insured who proves a breach of this obligation by the insurer may recover damages in excess of the policy limits. *Id.* at 612–13, 392 A.2d at 580. To prevail,

"The insured must, of course, prove that the insurer's failure or delay to make payment was a breach of contract. Not every delay or refusal to settle or pay a claim under the policy will constitute a breach of the contract. *Cf., e.g., Ledingham v. Blue Cross Plan for Hosp. Care of Hospital Serv. Corp.,* 29 Ill.App.3d 339, 330 N.E.2d 540 (1975) [*rev'd on other grounds,* 64 Ill.2d 338 [1 Ill.Dec. 75], 356 N.E.2d 75 (1976)] (refusal reasonable); *State Farm Gen. Ins. Co. v. Clifton,* 86 N.M. 757, 527 P.2d 798 (1974) (delay reasonable); *Amsden v. Grinnell Mut. Reins. Co.,* 203 N.W.2d 252 (Iowa 1972) (same)."

*Id.* at 612, 392 A.2d at 580. As the parentheticals following each case cited by the court suggest, both in New Hampshire and in other jurisdictions [4] reasonableness is the touchstone for determining whether an insurer has breached its obligation of good faith and fair dealing.[5]

St. Paul misconstrues the law in arguing that proof of malice or ill will is necessary to find a breach of the implied obligation of good faith and fair dealing. The Restatement of Contracts indicates that "[t]he phrase 'good faith' is used in a variety of contexts, and its meaning varies somewhat with the context." Restatement (Second) of Contracts § 205 comment a (1981).[6] Thus, when a plaintiff sues his insurer in

---

**4.** *See, e.g., Larraburu Bros., Inc. v. Royal Indemnity Co.,* 604 F.2d 1208, 1212 (9th Cir.1979) (applying California law) ("The test of the insurer's conduct is one of reasonableness"); *Safeco Insurance Co. of America v. Kartsone,* 510 F.Supp. 856, 859 (C.D.Cal.1981) (same) (insurer's conduct must "amount to an unreasonable denial to the insured of the benefits of the policy"); *Sobus v. Lumbermens Mutual Casualty Co.,* 393 F.Supp. 661, 673 (D.Md.1975), *aff'd,* 532 F.2d 751 (4th Cir.1976) (applying Maryland law) ("the concept [of good faith] includes elements of reasonable care ..."); *Memphis Bank and Trust Co. v. Tennessee Farmers Mutual Insurance Co.,* 619 S.W.2d 395, 397 (Tenn.App.1981) ("Good faith is characterized by reasonableness"); *Gruenberg v. Aetna Insurance Co.,* 9 Cal.3d 566, 573, 510 P.2d 1032, 1037, 108 Cal.Rptr. 480, 485 (1973) (insurer has "a duty not to withhold unreasonably payments due under a policy").

**5.** At oral argument, counsel for St. Paul contended that the district court's treatment of the good faith issue was at odds with our recent decision in *Voccio v. Reliance Insurance Companies,* 703 F.2d 1 (1st Cir.1983). In that case we applied Rhode Island law to the issue of an insurer's bad faith in settling claims arising out of a third-party insurance policy. We stated that "[b]ad faith ... involves behavior worse than simple negligence," and concluded that the plaintiffs there were required to show that the insurer's actions were "highly unreasonable, reckless or in 'bad faith.'" *Id.* at 2, 3. While New Hampshire, not Rhode Island law is controlling here, the district court's charge concerning bad faith was in any case fully consistent with *Voccio.*

**6.** According to the Restatement, good faith performance of a contract "excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness." Restatement (Second) of Contracts § 205 comment a (1981).

tort[7] and seeks punitive damages, proof of bad faith normally hinges on whether the insurer acted in a willful, reckless, or malicious manner. *See Craft v. Economy Fire and Casualty Co.,* 572 F.2d 565, 574 (7th Cir.1978) (applying Indiana law); *Robertsen v. State Farm Mutual Automobile Insurance Co.,* 464 F.Supp. 876, 883–84 (D.S.C. 1979) (applying South Carolina law); *Neal v. Farmers Insurance Exchange,* 21 Cal.3d 910, 921–22 n. 5, 582 P.2d 980, 986, 148 Cal.Rptr. 389, 395; *Anderson v. Continental Insurance Co.,* 85 Wis.2d 675, 697, 271 N.W.2d 368, 379 (1978).

■ However, the New Hampshire Supreme Court has expressly declined to recognize a cause of action in tort for the wrongful refusal to make payments due under a first-party insurance contract. *Lawton, supra,* 118 N.H. at 614, 392 A.2d at 581; *see also Jarvis v. Prudential Insurance Co. of America,* 122 N.H. 648, 652, 448 A.2d 407, 409 (1982) (reaffirming *Lawton* decision on this point). Here, the deVries seek only compensatory damages for breach of the contractual obligation of good faith and fair dealing. The district court's charge accurately stated New Hampshire law on this subject. There is therefore no merit to St. Paul's first contention.

## II.

■ St. Paul's second contention is that the district court erred in denying its motions for a directed verdict and for judgment notwithstanding the verdict. In its July 8, 1982 order denying St. Paul's motion for judgment notwithstanding the verdict, the district court also denied the plaintiffs' motion for attorney's fees, finding that St. Paul had not engaged in "unprincipled, malicious, unwarranted, and unjustifiable litigation." St. Paul argues, in essence, that

this finding is inconsistent with the court's denial of its motions.

In denying the plaintiffs' motion for attorney's fees, the district court distinguished between the kind of conduct that amounts to a breach of the covenant of good faith and fair dealing and the kind of conduct that justifies an award of attorney's fees. The court noted that, under New Hampshire law,

"Bad faith conduct held to justify the award of counsel fees has been found where one party has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons,' ... where the litigant's conduct can be characterized as unreasonably obdurate or obstinate, ... and where it should have been unnecessary for the successful party to have brought the action."

*Harkeem v. Adams,* 117 N.H. 687, 690–91, 377 A.2d 617, 619 (1977) (citations omitted). St. Paul argues that the same standard of bad faith should have been used by the district court in charging the jury on the implied covenant of good faith and fair dealing. However, as the discussion above makes clear, the terms "good faith" and "bad faith" mean different things in different contexts. In light of our holding that the district court's charge correctly stated New Hampshire law, the court's denial of St. Paul's motions for a directed verdict and for judgment notwithstanding the verdict was not error.

## III.

■ Finally, St. Paul contends that the district court erred in granting the plaintiffs' motion *in limine* to exclude evidence of their refusal to take a polygraph test. In *United States v. Winter,* 663 F.2d 1120, 1150 (1st Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 1249, 1250, 75 L.Ed.2d 479 (1983), we stated that, "[w]ithout deciding whether a *per se* prohibition against the use

---

7. Many states now recognize a cause of action in tort for the breach of a covenant of good faith and fair dealing. *E.g., Bibeault v. Hanover Insurance Co.,* 417 A.2d 313, 318–19 (R.I. 1980) (and cases cited therein at n. 4); *Christian v. American Home Assurance Co.,* 577 P.2d 899, 904 (Okl.1977); *Ledingham v. Blue Cross Plan for Hospital Care of Hospital Ser-*

*vice Corp.,* 29 Ill.App.3d 339, 330 N.E.2d 540 (1975), *rev'd on other grounds,* 64 Ill.2d 338, 1 Ill.Dec. 75, 356 N.E.2d 75 (1976); *Silberg v. California Life Insurance Co.,* 11 Cal.3d 452, 521 P.2d 1103, 113 Cal.Rptr. 711 (1974). *See generally* Granelli, "Good Times for Bad Faith", Nat'l L.J., July 11, 1983, at 1, col. 1 (discussing the recent increase in "bad faith" tort actions).

of lie detector tests is appropriate, we find that the trial judge acted within his discretion in refusing to admit such evidence in this case." *See also Pelegrina v. United States*, 601 F.2d 18, 22 (1st Cir.1979) (holding that district court was not required to consider polygraph results, without addressing "the vexing issue of admissibility").[8] The same approach is appropriate here. Since the district court clearly acted within its discretion in granting the plaintiffs' motion, there is no need to address the larger issue of when polygraph evidence is admissible in federal trials.

There were at least two valid reasons for excluding evidence of the deVries' refusal to take a polygraph test. First, polygraph evidence has long been considered of dubious scientific value and hence has usually been deemed irrelevant by the federal courts. *See United States v. Skeens*, 494 F.2d 1050, 1053 (D.C.Cir.1973); *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923). *See generally* Annot., 43 A.L.R.Fed. 68, 78–79 (1979) ("Judicial distrust of polygraph test results ... has resulted in general denial of their admissibility in federal courts up to the present time."). The New Hampshire Supreme Court, following the majority rule amongst state courts, has expressed a similar view. *State v. French*, 119 N.H. 500, 503, 403 A.2d 424, 426, *cert. denied*, 444 U.S. 954, 100 S.Ct. 432, 62 L.Ed.2d 326 (1979). Moreover, evidence of a person's refusal to take a polygraph test has specifically been held inadmissible. *Aetna Insurance Co. v. Barnett Brothers, Inc.*, 289 F.2d 30, 34 (8th Cir.1961).

Second, even if such evidence were considered relevant, under Rule 403 of the Federal Rules of Evidence the district court was permitted to exclude it if its "probative

value" was outweighed by "the danger of unfair prejudice". St. Paul contends that evidence of the deVries' refusal to take a polygraph test would have been offered on the issue of the company's good faith in rejecting their claim. However, the possibility that the jury would treat the deVries' refusal as evidence of their responsibility for the fire, the other issue at the trial, gave rise to a serious danger of prejudice to the plaintiffs. The district court therefore acted well within its discretion in excluding the evidence.

St. Paul's argument that the principles governing the admission of polygraph evidence in criminal trials ought not to apply in civil cases like this one is not persuasive. The fact that the evidence would have been offered on the issue of St. Paul's good faith, rather than on the issue of an accused's guilt, makes no difference. "If such tests are unreliable evidence in criminal cases, we see no reason why they should become reliable in civil cases. Unreliable evidence is unreliable evidence in any forum." *Memphis Bank and Trust Co. v. Tennessee Farmers Mutual Insurance Co.*, 619 S.W.2d 395, 396 (Tenn.App.1981); *see also Aetna Insurance Co. v. Barnett Brothers, Inc.*, *supra*, 289 F.2d at 34 (affirming exclusion from civil trial of witness's refusal to take polygraph test).

In light of the foregoing, St. Paul's motion for certification to the New Hampshire Supreme Court is *denied*. The judgment of the district court is *affirmed*.

---

8. A number of circuits have recently adopted a standard which leaves the decision as to admissibility in each case to the trial judge's discretion, *e.g., United States v. Rumell*, 642 F.2d 213, 215 (7th Cir.1981); *United States v. Webster*, 639 F.2d 174, 186 (4th Cir.1981), *modified on other grounds and aff'd*, 669 F.2d 185 (4th Cir.), *cert. denied*, 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981); *United States v. McIntyre*, 582 F.2d 1221, 1226 (9th Cir.1978), although for the most part that discretion has

been exercised to exclude the evidence. Annot., 43 A.L.R.Fed. 68, 72 (1979). Other circuits follow what amounts to a *per se* rule prohibiting admission of the results of polygraph examinations. *E.g., United States v. Hunter*, 672 F.2d 815, 817 (10th Cir.1982); *United States v. Clark*, 598 F.2d 994, 995 (5th Cir.1979), *order granting rehearing en banc vacated and panel opinion reinstated*, 622 F.2d 917 (5th Cir.1980) (*en banc*), *cert. denied*, 449 U.S. 1128, 101 S.Ct. 949, 67 L.Ed.2d 116 (1981).