Division of Welfare
No. 83-360

### PETITION OF YVONNE PELLETIER
### (New Hampshire Division of Welfare)

October 5, 1984

*New Hampshire Legal Assistance*, of Concord (*Mitchell M. Simon* on the brief and orally), for Yvonne Pelletier.

*Gregory H. Smith*, attorney general (*Marc R. Scheer* on the brief and orally), for the State.

*J. Alexander MacMartin, Jr.*, of Wilton, by brief for the New Hampshire Association for the Elderly, as amicus curiae.

DOUGLAS, J.   In this petition for certiorari, the petitioner, Yvonne Pelletier, challenges the division of welfare's denial of her application for medicaid. We grant the petition and remand.

The record reveals that Mrs. Pelletier is an 81-year-old, childless widow. She entered the Dover House Healthcare nursing home, an intermediate care facility (ICF), in June 1977, as a private pay patient. She was placed in that facility on the recommendation of her treating physician following her hospitalization at the Wentworth-Douglas Hospital in Dover. In May 1983, after spending in excess of $60,000 for six years of care at the nursing home, Mrs. Pelletier exhausted her personal funds. She then applied to the division of welfare for medicaid assistance to pay for the costs of her nursing home care.

By letter dated June 22, 1983, the division of welfare notified Mrs. Pelletier that it had denied her application for medicaid. The notice of adverse determination stated:

> "The Office of Medical Services has reviewed your need for health care and has determined that your condition does not meet the requirements for intermediate level of care.

> This does not mean that you cannot receive care and services in a nursing home, just that your care will not be paid for by the Medicaid program."

The letter stated that the New Hampshire Division of Welfare, Office of Medical Services has the responsibility to monitor admissions and continued stays in long-term care facilities. N.H. DEP'T OF HEALTH AND WELFARE, DIVISION OF WELFARE, MEDICAL ASSISTANCE MANUAL § 9547.1. The letter informed Mrs. Pelletier of her right to request a fair hearing to appeal the decision.

On July 1, 1983, Mrs. Pelletier requested a fair hearing, which was held on July 25, 1983. In a decision dated July 29, 1983, the hearing officer upheld the division's decision that Mrs. Pelletier's application for medicaid be denied.

The division denied Mrs. Pelletier's application because it concluded that she did not satisfy the criteria used by the office of medical services in making the determination as to whether an individual is eligible to receive medicaid coverage of his or her nursing home care. Section 9544.1d of the Medical Assistance Manual of the New Hampshire Department of Health and Welfare states:

> "Criteria used by the Office of Medical Services (OMS) in making Intermediate Care Facility level of care determinations on an *initial* basis are: The individual requires 24-hour nursing care for one of the following criteria—
>
> 1. Medical monitoring and nursing care;
> 2. Restorative nursing care and/or rehabilitative care;
> 3. Medication administration or instruction and supervision of self-medication *for discharge purposes only;*
> 4. Assistance with activities of daily living;
> 5. Special dietary needs.
>
> For *continued* stays, the following criterion will be used in conjunction with 1. through 5. above:
>
> 6. Dependency on a particular facility for maintaining his/her overall health status. Factors considered are the individual's age, mental status, and support system (family, friends, community)."

Using the above criteria, the division determined that "[i]n its view, Mrs. Pelletier does not need daily nursing supervision but, instead, the care and supervision provided in a shared home." It did not consider any evidence relative to her dependency on the nursing home because of its position that the *continued* stay criterion does not apply to patients who have been in a facility on a private pay basis.

It is this decision that Mrs. Pelletier challenges. Because there is no statutory mechanism by which she can appeal a decision of the New Hampshire Division of Welfare, she seeks relief by petition for certiorari. *See Petition of Clark*, 122 N.H. 888, 451 A.2d 1303 (1982).

Mrs. Pelletier asks this court to determine whether the division erred in disregarding her dependency on the facility in deciding whether she was eligible to receive medicaid coverage of her nursing home care. Both Mrs. Pelletier and the division agree that under section 9544.1d of the New Hampshire Department of Health and Welfare Medical Assistance Manual, the dependency criterion is to be considered only for *continued* stays. The regulations, however, do not define the applicability of the *continued* stay criterion. Consequently, the question for this court is whether the division should have considered the *continued* stay criterion in its review of Mrs. Pelletier's application.

The division maintains that the entire regulatory scheme plainly suggests that the *continued* stay criterion is to be considered only when medicaid recipients are undergoing a review of the continued need for their level of care. *See* N.H. DEP'T OF HEALTH AND WELFARE, DIVISION OF WELFARE, MEDICAL ASSISTANCE MANUAL § 9547. It is the division's position that this criterion is not applicable to a determination of the eligibility of private pay patients applying for medicaid coverage of their nursing home care after exhausting their personal funds.

The division advances two arguments in support of its position. It first argues that under a literal interpretation of the regulation, dependency could not be considered. It asserts that Mrs. Pelletier is an initial applicant under a plain reading of the regulation and, thus, that only the five criteria used by the division in making level of care determinations on an *"initial"* basis are applicable to her application.

The division further argues that under the regulatory scheme, Mrs. Pelletier, as an initial applicant, must demonstrate medical need to be eligible for medicaid coverage of her nursing home care. It contends that since it did not have the opportunity to make a level of care determination when Mrs. Pelletier was first placed in the nursing home, it must do so now solely on the basis of the first five criteria because if dependency is considered, she could, in effect, become eligible for medicaid funds without ever having demonstrated a medical need for her level of care. The division is concerned that any other reading of the regulation would result in allowing private pay patients to enter nursing homes without medical need, to become institutionalized and, then, after spending their life-

long savings on their nursing home care, to become eligible for medicaid solely by virtue of their dependency on an institution.

Mrs. Pelletier argues that the division's interpretation of its regulations is unreasonable and unlawful. She further contends that this interpretation, which, in effect, bars consideration of undisputed medical evidence, is at odds with the plain meaning of the regulation and presents serious constitutional problems. We agree.

At the outset, we note that our review of an administrative agency's decision on a petition for certiorari is narrow. "The test to determine whether to grant a writ of certiorari is whether the 'agency has acted illegally in respect to jurisdiction, authority or observance of the law . . . or has abused its discretion or acted arbitrarily, unreasonably or capriciously.'" *Wilson r. State Personnel Comm'n*, 118 N.H. 424, 426, 387 A.2d 1160, 1161 (1978). Moreover, an agency's interpretation of its regulations is to be accorded great deference. *Cheshire Hosp. r. N.H.-Vt. Hosp. Service*, 689 F.2d 1112, 1117 (1st Cir. 1982). "Nevertheless, our deference to an agency's interpretation of its own regulations is not total. We still must examine the agency's interpretation to determine if it is consistent with the language of the regulation and with the purpose which the regulation is intended to serve." *Id.*

The language of the regulation at issue reads, in pertinent part: "For *continued* stays the following criterion will be used . . . ." N.H. DEP'T OF HEALTH AND WELFARE, DIVISION OF WELFARE, MEDICAL ASSISTANCE MANUAL § 9544.2d. In construing regulations, words and phrases will be interpreted according to their plain and common usage unless it appears, from a reading of the regulation, that a different meaning was intended. *Appeal of John Denman*, 120 N.H. 568, 572, 419 A.2d 1084, 1087 (1980). According to The American Heritage Dictionary of the English Language 288 (1981), the word "continue" means "to remain in the same state, capacity, or place." The word "stay" is defined as remaining or continuing in a given place or condition. *Id.* at 1260. *See also* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 493, 2231 (1961). Hence, under the plain meaning of the regulation, Mrs. Pelletier, who seeks to remain at her present level of care, is a *continued* stay applicant.

Moreover, a reading of the regulation does not suggest that a different meaning was intended. The division's interpretation limits the application of the *continued* stay criterion to medicaid recipients undergoing review of the continued need for their level of care. Such a restriction is not found in the text of the regulation, and there is no

language from which we can infer that the term *continued* stay is to encompass only those applicants.

Not only is the division's interpretation not supported by the plain language of the regulation, but it is also not in harmony with the purpose of the regulations. Under State law, a medicaid applicant's appropriate level of care is determined through a "utilization review." N.H. DEP'T OF HEALTH AND WELFARE, DIVISION OF WELFARE, MEDICAL ASSISTANCE MANUAL § 9543n. The purpose of the utilization review is to eliminate unnecessary utilization of services and to assure adequate quality of care. In other words, it is designed to place individuals in the proper level of care, according to their medical needs.

By including the dependency criterion in the ICF eligibility criteria for *continued* stays, the division recognizes the relevancy of psycho-social factors in determining the proper level of care for those persons who have become "institutionalized." Dependency is relevant to a utilization review because of the psycho-social effects of institutionalization on, and the resulting medical needs of, the elderly patient. Insofar as the inclusion of the dependency criterion demonstrates a recognition of the psycho-social needs of a patient who has been institutionalized, a finding of dependency involves a determination of medical need. By ignoring such medically relevant evidence in making eligibility determinations of private pay patients, the division contravenes the purpose of the utilization review.

The division contends that regardless of whether this court accepts its claim that a literal interpretation of the regulation would preclude consideration of the *continued* stay criterion in Mrs. Pelletier's case, that criterion would not apply under the policy it articulated and adopted during the promulgation of the regulations. The division points to a bulletin it circulated in April 1982, informing nursing homes and hospitals of the adoption and implementation of the ICF eligibility criteria. The bulletin states: "The initial level of care criteria will be used for private clients in nursing homes who are applying for Medicaid nursing home benefits."

The record establishes that prior to October 1981, the division of welfare contracted with the New Hampshire Foundation for Medical Care, a Professional Standards Review Organization (PSRO), to make nursing home eligibility determinations. The PSRO established criteria for ICF level of care determinations which included psycho-social factors such as institutionalization. The PSRO applied the psycho-social criteria to all long-term nursing home residents seeking medicaid assistance regardless of the source of payment for their care.

In October 1981, the PSRO lost its funding and the division of welfare assumed responsibility for ICF level of care determinations. For the first few months, the division based its ICF level of care determinations on the PSRO criteria. In February 1982, at the urging of New Hampshire Legal Assistance, the division filed proposed rules defining the criteria to be used by it in making ICF level of care determinations.

The applicable proposed rule was severely criticized for its lack of psycho-social considerations. In response to the testimony presented at the hearings on the proposed rule, the division added the *continued* stay criterion. In an inter-department communication, the office of policy and planning coordination notified the division that "the final policy/rules provide for consideration of an individual's dependency on the facility for maintaining his overall health when the review is for a continued stay." Nothing in that notice or the history of the regulation itself suggests the policy that the *continued* stay criterion is to apply only to medicaid recipients. It appears, then, that the division adopted this policy in its April 1982 bulletin to hospitals and nursing homes.

RSA chapter 541-A (Supp. 1983) prescribes the procedure agencies must follow if their "rules" are to have effect. RSA 541-A:3–:3-f (Supp. 1983). *See Appeal of John Denman*, 120 N.H. 568, 573, 419 A.2d 1084, 1087 (1980). Under RSA 541-A:1, XIII (Supp. 1983), a "rule" is a "regulation, standard or other statement of general applicability adopted by an agency to . . . (b) prescribe or interpret an agency policy, procedure or practice requirement binding on persons outside the agency . . . ." Certainly, the policy statement the division included in its April 1982 bulletin fits within this statutory definition of a "rule." Inasmuch as the adoption of this policy constituted the promulgation of a substantive rule, adherence to the rule-making procedures of RSA chapter 541-A was required. Because these statutory procedures were not followed, the division's April 1982 policy is without effect.

Accordingly, based upon the plain meaning and the purpose of the regulation, we conclude that the division erred in disregarding evidence of dependency in determining whether Mrs. Pelletier, a six-year resident of the Dover House Healthcare nursing home, was eligible for medicaid coverage of her nursing home care. We remand this case to the division of welfare for further hearings on Mrs. Pelletier's eligibility for medicaid benefits, with the specific instruction that the division consider evidence of Mrs. Pelletier's

dependency on the institution for maintaining her overall health status.

*Reversed and remanded.*

All concurred.