Merrimack
No. 97-787

### KERRY ASMUSSEN & a.

v.

### COMMISSIONER, NEW HAMPSHIRE DEPARTMENT OF SAFETY & a.

December 28, 2000

*Stein, Volinsky & Callaghan, P.A.*, of Concord (*Peter G. Callaghan* on the brief, and *Robert A. Stein* orally), for the intervenors.

*Philip T. McLaughlin*, attorney general (*Christopher P. Reid*, senior assistant attorney general, on the brief, and *Douglas N. Jones*, assistant attorney general, orally), for the defendants.

*Kerry P. Steckowych*, of Goffstown, and *George E. Wattendorf*, of Dover, on the brief and orally, as *amicus curiae* for the New Hampshire Chief's of Police Association, Inc. and the New Hampshire District Court Prosecutor's Association.

BROCK, C.J. The defendants, the Commissioner of the New Hampshire Department of Safety and the Director of the New Hampshire Division of Motor Vehicles, appeal a decree of the Superior Court (*Brennan*, J.) granting a petition for declaratory judgment regarding policies affecting administrative license suspensions. *See* RSA 265:91-a, :91-b (1993 & Supp. 1999). We affirm in part, reverse in part, vacate in part, and remand.

We summarize the pertinent facts found by the trial court or supported by the record. In December 1992, the assistant commissioner of the department of safety (department) held a meeting with hearings examiners from the department's bureau of hearings (bureau) who preside over administrative license suspension (ALS) hearings. The assistant commissioner, who has ultimate supervisory authority over the bureau, *see* RSA 21-P:5, II (1988 & Supp. 1999), called the meeting to brief the hearings examiners on the ALS statute, which was to become effective in January 1993, *see* Laws 1992, 258:15, to insure that the new law would be effectively and

efficiently administered. He was concerned that hearings examiners had been conducting hearings under prior law with the formalities of a court proceeding, and that police officers were losing cases on technical grounds. The administrator of hearings, who supervises hearings examiners and is directly responsible to the assistant commissioner, see RSA 21-P:13, I (1988), attended the meeting and later distributed a memorandum memorializing the assistant commissioner's instructions. The memorandum was marked, "PRIVILEGED AND CONFIDENTIAL."

At the meeting, the assistant commissioner reminded the hearings examiners that police officers are often intimidated when they represent the State and the defendant has retained private counsel. Thus, he instructed them not "to act like judges" and not to conduct hearings as if they were courtroom trials. Specifically, he instructed that hearsay "is admitted" in administrative hearings, and that the rules of evidence do not apply. He also advised that they could ask questions in hearings so long as they remained impartial. They were not to dismiss hearings automatically on technical grounds such as failure of the police officer to state that the road where the driver was arrested is a public way. See RSA 265:82 (Supp. 1999). Rather, they were to reopen the hearing first and allow the police officer an opportunity to introduce the required proof. Moreover, they were instructed to ask questions to develop the evidence and assist the officer in meeting his or her burden of proof. If a police officer whose presence was required at the hearing failed to appear, see RSA 265:91-b, I(c) (1993), the hearings examiners were directed to continue the hearing and notify the officer to appear. The assistant commissioner also instructed them not to dismiss a hearing for a deficiency in the sworn statement of the arresting officer, see RSA 265:91-a, I, :91-b, II, as the testimony of the police officer cured the defect, and he advised them that the department was involved in legislative efforts to eliminate the sworn statement requirement. He further instructed them to keep their reports brief as the statute provided for de novo review in the superior court, see RSA 265:91-d (1993) (amended 1994, 1999) (current version at RSA 265:91-e (Supp. 1999)); RSA 263:75 (1993) (amended 1995), and he advised them that legislation was pending to provide for record review in the superior court, see RSA 263:75 (Supp. 1999) (statute now provides for record review). Finally, the assistant commissioner reminded the hearings examiners that they were classified employees subject to assignment. These instructions were never formally adopted under the administrative procedures act (APA). See RSA ch. 541-A (1997 & Supp. 1999).

Subsequently, some hearings examiners expressed concern as to whether the instructions were binding directives, and whether the instructions should remain confidential. The administrator of hearings in January 1993 issued memoranda clarifying that the December 1992 instructions were binding, and that they were to be considered confidential legal advice. When the assistant commissioner later came to believe that some of the hearings examiners were communicating *ex parte* with members of the defense bar about the instructions, he convened a meeting in February 1993, at which he told the hearings examiners that if they could not carry out department policies, they could resign, but they could not undermine the policies. One hearings examiner was removed from ALS hearings until he could be "retrained," after it was discovered that he may have engaged in *ex parte* communications with defense counsel and had made what the assistant commissioner believed to be inappropriate disclosures of the instructions in hearings. That hearing officer had previously objected to the instructions within the department.

This case also involves the department's application of a 1993 Superior Court (*Manias,* J.) order holding that before the department could suspend a driver's license through the ALS process, the driver's blood alcohol content (BAC) must exceed the legal limit, *see* RSA 265:91-a, I, by the testing equipment's margin of error, namely 0.015 percent. *Hamilton v. Flynn,* No. 93-E-213 (Merrimack County Superior Court July 30, 1993). The department did not appeal *Hamilton* and notified all hearings examiners of the decision, but did not publish or adopt a formal rule codifying *Hamilton.*

Several individuals subject to potential ALS suspensions filed a petition for declaratory judgment requesting that the court order the department to make available all unpublished guidelines, and declare the guidelines void under the APA. A number of parties intervened, and current counsel for the intervenors (who was not counsel on the original petition) filed a motion to expand the petition, alleging that the "use of secret, unwritten and unpromulgated rules" in ALS hearings violated not only the APA, but the right to due process, *see* N.H. CONST. pt. I, art. 15, and the right to be tried by an impartial judge, *see* N.H. CONST. pt. I, art. 35. The intervenors requested that the court declare the instructions null and void, admonish the hearings examiners to be impartial, and remand all hearings presently on appeal back to the department for review as to whether the directives were applied.

Over time, as the plaintiffs and intervenors settled their cases with the department, they withdrew and new parties intervened.

More than thirty parties ultimately joined the action. In December 1993, the State requested that the trial court deny additional motions to intervene, arguing that "[t]he revolving door procedure of intervenors places an undue burden on the state." In February 1994, the trial court ordered a halt to additional intervenors. Presently, none of the original plaintiffs are party to the suit, and only six intervenors remain.

After a trial on the merits, the Superior Court (*Brennan*, J.) found that the ALS law had been administered with actual prejudice and that the regulatory, statutory, and due process rights of the intervenors had been impaired. The court concluded that the administrator of hearings had interpreted the December 1992 instructions as "directives" binding on the hearings examiners. The court further found:

> To the extent that any of [the] directives were inconsistent with statutory provisions or that they substantively changed any rules and were binding on "persons outside the agency," they should have been published either as rules under the APA, or included as "staff memoranda," a part of the hearing officer's records under RSA 541-A:31, VI(h).

The court found that the December 1992 instructions were "rules" that were neither promulgated nor published pursuant to the APA, and that under RSA 541-A:33, VI, "[d]rivers subject to ALS suspensions should have notice of the directives contained within the [December 1992] memorandum." The court also found that the instructions and subsequent communications constituted *ex parte* communications prohibited by RSA 541-A:36. Additionally, the court found that the department had set a new internal policy in response to the *Hamilton* decision and, as such, drivers subject to the ALS law were entitled to "notice *by rule* that a BAC of .09 (formerly .10) or higher, is required to establish cause for an administrative suspension."

Although the court found no evidence that the assistant commissioner intended to interfere with the due process rights of those subject to the ALS statute, the court concluded that the instructions limited the discretion of hearings examiners. The court also found that the assistant commissioner exercised improper command influence through the directives, his reminder that hearings examiners were subject to assignment, his statements at the February 1993 meeting, and his "discipline" of the hearing officer for inappropriate discussions with defense counsel. Those communications and actions, in the court's view, "carrie[d] the inappropriate threat that

questioning unpublished directives could result in undesirable assignments."

The court granted most of the intervenors' requests for findings of fact and rulings of law, including a ruling that "[t]he hearings held by the Department of Safety Bureau of Hearings under the ALS law violate RSA 541-A, Part I, Article 15 of the N.H. Constitution and the 14th Amendment to the United States Constitution and Part I, Article 35 of the N.H. Constitution." The court denied, however, all the intervenor's requests for relief except attorney's fees, instead fashioning its own remedies. The court did not fashion any remedy regarding the illegal and unconstitutional use of the "instructions" other than to declare them ineffective. See Petition of Pelletier, 125 N.H. 565, 571, 484 A.2d 1119, 1123 (1984). Rather, the court focused on the policy instituted in response to Hamilton and ordered that "the Department of Safety must promulgate the Hamilton policy as a rule, and all drivers who tested .08, or .10 under the old law, after the November 9, 1993 date of the policy, must have their ALS suspensions vacated." The court awarded attorney's fees, finding that the litigation conferred a substantial benefit on all drivers subject to the ALS procedure. This appeal followed.

On appeal, the State argues that the superior court erred in: (1) ruling that the intervenors had standing to pursue the action; (2) ordering the department to "promulgate" a rule codifying the Hamilton decision; (3) ruling that the assistant commissioner's supervision constituted improper rulemaking, improper command influence, and ex parte communications; and (4) awarding attorney's fees.

As a preliminary matter, the intervenors contend that the appeal should be dismissed because the State failed to file its appeal within thirty days of a decision on the merits. See SUP. CT. R. 7. The superior court issued its initial order on February 24, 1997, and a series of motions were filed by both parties immediately thereafter. Among those motions was the intervenors' motion for prospective relief, requesting that the court direct the department to report periodically its compliance with the court's order and to reopen any case in which there was a good faith basis to believe that department policy unfairly affected the outcome. The court denied that motion in an order issued on October 10, 1997, and the State filed this appeal on Monday, November 10, 1997.

The intervenors contend that because the State did not file its appeal within thirty days of the court's order on the merits, the appeal should be dismissed. We disagree. "Timely filed post-trial

motions stay the running of the appeal period for all parties to the case in the lower court including those not filing such motions." SUP. CT. R. 7(1). The intervenors' motion for prospective relief was timely filed with the superior court, *see* SUPER. CT. R. 59-A; thus the running of the appeal period was stayed until October 10, 1997. This case is distinguishable from *Germain v. Germain*, 137 N.H. 82, 84, 623 A.2d 760, 761 (1993), where we held that in a bifurcated divorce proceeding an order on the divorce decree and property settlement constituted a final decision on the merits even though child custody and permanent support issues remained undetermined. The prospective relief sought by the intervenors was not severable from the decision rendered in February 1997, *cf. Jenkins v. G2S Constructors*, 140 N.H. 219, 223, 665 A.2d 354, 357 (1995), and thus the appeal period did not begin to run until October 10, 1997.

## I. Standing

The State contends that the intervenors lacked standing to bring their claims in a declaratory judgment action pursuant either to RSA 541-A:24 (1997) or RSA 491:22 (1997). The intervenors counter that they demonstrated standing sufficient to maintain the action solely under RSA 541-A:24.

The action was initially commenced as a challenge to the validity of certain unpromulgated "rules" under the predecessor to RSA 541-A:24, which provided:

> The validity or applicability of a rule may be determined in an action for declaratory judgment in the Merrimack county superior court if it is alleged that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff. The agency shall be made a party to the action. A declaratory judgment may be rendered whether or not the plaintiff has requested the agency to pass upon the validity or applicability of the rule in question.

RSA 541-A:7 (1974). The intervenors later broadened the attack, however, to challenge the constitutionality of the defendants' administration of ALS hearings. Because declaratory relief is unavailable absent statutory authorization, *see Wuelper v. University of N.H.*, 112 N.H. 471, 473, 298 A.2d 747, 749 (1972), the parties' arguments require that we first determine the statutory authority for the intervenors' claims.

RSA 541-A:24 provides a mechanism for challenging "[t]he validity or applicability of a rule" under the APA. While we do not foreclose the availability of RSA 541-A:24 to challenge the constitutionality of an administrative rule, *cf. Town of Orford v. N.H. Air Resources Comm.*, 128 N.H. 539, 540, 522 A.2d 979, 981 (1986), we decline to construe the statute to permit the broader constitutional challenge to the State's administration of ALS hearings in this case. Indeed, notwithstanding their argument on appeal, the intervenors contended below that their "constitutional claims are not brought under the APA. We brought them as a general declaratory judgment claim." Accordingly, we will treat the intervenors' claim that the unpromulgated rules were invalid under the APA as having been brought under RSA 541-A:24, and their constitutional claims as having been brought pursuant to RSA 491:22, the general declaratory judgment statute.

At the outset we reject the State's argument that RSA 541-A:24 is unavailable unless the challenged "rule" has been officially promulgated under the APA. "In matters of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *State v. Hatt*, 144 N.H. 246, 247, 740 A.2d 1037, 1038 (1999) (quotation omitted). "We will construe statutes so as to effectuate their evident purpose," *Quality Carpets v. Carter*, 133 N.H. 887, 889, 587 A.2d 254, 255 (1991) (quotation omitted), and will not apply a construction that nullifies, to an appreciable extent, that purpose, *see State v. Kay*, 115 N.H. 696, 698, 350 A.2d 336, 338 (1975).

The APA defines "rule" in part as a "regulation, standard or other statement of general applicability adopted by an agency to . . . prescribe or interpret an agency policy, procedure or practice requirement binding on persons outside the agency." RSA 541-A:1, XV. We have interpreted this definition to include rules that have not been properly promulgated under the APA, *see Petition of Pelletier*, 125 N.H. at 571, 484 A.2d at 1123, and the State offers no persuasive argument why this interpretation should not apply to "rule" as it is used in RSA 541-A:24. Moreover, the evident purpose of RSA 541-A:24 is to allow challenges to the validity of an administrative rule in advance of its application. It would be an unduly narrow interpretation of the statute to limit actions under RSA 541-A:24 to those instances where an agency has followed the APA, thereby allowing agency administrators to create *de facto* rules with impunity. *See* 5 R. WEIBUSCH, NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 64.10, at 607 (1998). Rather, the

purpose of the statute allows a plaintiff to seek a determination that a "policy" is in fact a "rule" under the APA, and that the "rule" impairs his or her legal rights or privileges. Accordingly, the trial court properly exercised jurisdiction under RSA 541-A:24.

The State argues that the intervenors lacked standing because they produced no evidence of harm, and because they conceded shortly before trial that they could not demonstrate that any of them had suffered actual harm. "In evaluating whether a party has standing to sue, we focus on whether the [party] suffered a legal injury against which the law was designed to protect." *Roberts v. General Motors Corp.*, 138 N.H. 532, 535, 643 A.2d 956, 958 (1994). "A party will not be heard to question the validity of a law, or of any part of it, unless he shows that *some right of his* is impaired or prejudiced thereby." *Silver Brothers, Inc. v. Wallin*, 122 N.H. 1138, 1140, 455 A.2d 1011, 1012 (1982) (quotation omitted). The claims raised in a declaratory judgment action

> must be definite and concrete touching the legal relations of parties having adverse interests. The action cannot be based on a hypothetical set of facts, and it cannot constitute a request for advice as to future cases. Furthermore the controversy must be of a nature which will permit an intelligent and useful decision to be made through a decree of a conclusive character.

*Salem Coalition for Caution v. Town of Salem*, 121 N.H. 694, 696, 433 A.2d 1297, 1299 (1981) (quotations and citations omitted). Additionally, a party seeking declaratory relief pursuant to RSA 541-A:24 must "*prove* that the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, his legal rights or privileges." *Town of Orford*, 128 N.H. at 542, 522 A.2d at 981 (quotations omitted) (applying predecessor to RSA 541-A:24).

■ In this case, the trial court found, and the record supports, that at the time they intervened, each of the intervenors were subject to the ALS statute. *See* RSA 265:91-a. The record also indicates that five of the six intervenors timely requested an ALS hearing. *See* RSA 265:91-b, I(a) (1993). We conclude on these facts that those five intervenors sufficiently demonstrated a claim adverse to the State to challenge under RSA 491:22 the constitutionality of the process to which they were subject at the time they moved to intervene. Their constitutional challenges were not based on the hypothetical application of the ALS statute, but presented an actual

controversy between the department and the intervenors adequate to allow the court to render "an intelligent and useful decision." *Salem Coalition for Caution*, 121 N.H. at 696, 433 A.2d at 1299 (quotation omitted).

■ Although the remaining intervenor requested an ALS hearing, the record reveals that his request was denied as untimely. *See* RSA 265:91-b, I(a). We conclude that the trial court erred in failing to dismiss both his constitutional claims and his claims under the APA. Since he waived his right to a hearing under RSA 265:91-b, I(a), his challenges to the constitutionality of the State's administration of ALS hearings and to the application of invalid rules in ALS hearings can only be construed as a request for advice as to hypothetical hearings.

■ With respect to the remaining intervenors' challenges to the validity of the purported rules, we note that the record is devoid of any evidence that any of the intervenors had a BAC above the legal limit but within the margin of error of the testing equipment when their licenses were suspended. Similarly, the record contains no sworn report from an arresting officer. Thus, the intervenors failed to prove that their legal rights were threatened by the application of an unpromulgated rule in response to the *Hamilton* decision, or by an unpromulgated rule that defects in sworn reports of arresting officers were to be ignored, and we conclude that the trial court erred by finding that they had standing to challenge those purported rules. *See Town of Orford*, 128 N.H. at 542-43, 522 A.2d at 980-81. By contrast, whether the remaining purported rules would be applied in the intervenors' individual hearings was not ascertainable prior to the hearings. Thus, by timely requesting a hearing under RSA 265:91-b, I(a), we conclude that the intervenors sufficiently proved that they were threatened with the application of those rules to challenge them under RSA 541-A:24. *See id.* at 542, 522 A.2d at 980.

■ We reject the intervenors' argument that the State conceded standing by failing to object on standing grounds when they moved to intervene. The requirement that a party demonstrate harm to maintain a legal challenge rests upon "the constitutional principle that the judicial power ordinarily does not include the power to issue advisory opinions." *Id.* at 542, 522 A.2d 981. Accordingly, a challenge to a party's standing on the ground that no actual controversy exists constitutes a challenge to the court's subject matter jurisdiction, which may be raised at any point in the proceedings. *See In re*

*Michelle G.*, 727 A.2d 226, 228 (Conn. App. Ct. 1999); *Thompson v. County of Franklin*, 15 F.3d 245, 248 (2d Cir. 1994); *cf. Conway v. Water Resources Board*, 89 N.H. 346, 348-49, 199 A.2d 83, 87 (1938).

The State next argues that the intervenors lacked standing because they had an adequate remedy at law, namely, a statutory right to appeal their administrative license suspensions to the superior court. *See* RSA 265:91-d (1993 & Supp. 1999) (amended 1993 and 1999); RSA 263:75. We have held that where an adequate alternative remedy exists, a party may not pursue a declaratory judgment action pursuant to RSA 491:22. *See, e.g., Morin v. Berkshire Mut. Ins. Co.*, 126 N.H. 485, 486, 493 A.2d 500, 501 (1985). The intervenors argue, however, that RSA 541-A:24 contains no requirement that they pursue relief through alternative proceedings.

The requirement under RSA 491:22 that adequate alternative relief be unavailable is premised upon our interpretation that the statute "was designed to supply deficiencies in legal procedure . . . [and] was not intended as a substitute for ample remedies in use before its adoption." *Lisbon District v. Lisbon*, 85 N.H. 173, 174, 155 A. 252, 253 (1931). RSA 541-A:24, however, explicitly provides that "[a] declaratory judgment may be rendered whether or not the plaintiff has requested the agency to pass upon the validity or applicability of the rule in question." The plain words of the statute indicate that the legislature intended to create a mechanism whereby the superior court may determine the validity of a rule whether or not the party has challenged the rule in an administrative hearing. Accordingly, we conclude that the availability of an appeal under RSA 265:91-d of an adverse ruling on the validity of a rule did not bar a challenge to the rule pursuant to RSA 541-A:24.

We reject the State's argument that the availability of an appeal under RSA 265:91-d or a petition for certiorari precluded the intervenors' constitutional challenges under RSA 491:22. The State argues that our opinion in *Petition of Grimm*, 138 N.H. 42, 635 A.2d 456 (1993), "established the exclusive method of challenging the bias or prejudice of an administrative decision-maker." In *Petition of Grimm*, we rejected an argument that a party was entitled to *voir dire* members of an administrative board to ascertain potential bias. We concluded that because a quasi-judicial officer is presumed to be impartial, "a claim of bias must be developed independently of any interrogation of the board." *Petition of Grimm*, 138 N.H. at 52-53, 635 A.2d at 463. Specifically, a party seeking to disqualify an administrative official is required to "file a motion for recusal

supported by a sufficient affidavit of personal bias or other disqualification." *Id.* at 52, 635 A.2d at 463. The State contends that to raise their claims that the ALS procedure as administered by the State violated their rights to due process and an impartial adjudication, the intervenors were required first to challenge their individual hearings examiners for bias, and to appeal any adverse ruling under RSA 265:91-d or to file a petition for certiorari. We disagree.

■ The intervenors in this case, unlike the petitioner in *Grimm*, did not seek to disqualify individual hearings examiners for bias harbored against them personally. Rather, they sought to prove that the ALS procedure as administered by the State was unconstitutionally biased toward police officers, and that hearings examiners were thus incapable of conducting unbiased hearings. While we continue to adhere to "the general proposition that the availability of adequate relief through other proceedings bars the maintenance of a declaratory judgment action," *Andrews v. Nationwide Mut. Ins. Co.*, 124 N.H. 148, 151, 467 A.2d 254, 256 (1983), we conclude that a declaratory judgment petition was an appropriate method to adjudicate the constitutional claims raised in this case, *cf. Carbonneau v. Company*, 96 N.H. 240, 243, 73 A.2d 802, 806 (1950). Specifically, we note that under RSA 265:91-b, II (1993 & Supp. 1999), the scope of an ALS hearing is limited to certain enumerated factors relevant to whether the driver's license was properly suspended under RSA 265:91-a. The scope of an appeal under RSA 265:91-d is similarly limited. *Cf. Bragg v. Director, N.H. Div. of Motor Vehicles*, 141 N.H. 677, 690 A.2d 571 (1997). Indeed, as counsel for the State represented at oral argument, "it was only through this [declaratory judgment] mechanism that the defense attorneys were able to introduce these extraneous [constitutional] matters." We decline to hold under these facts that an appeal under RSA 265:91-d was an adequate alternative to a declaratory judgment action to litigate the constitutional issues raised in the case. Likewise, we decline to hold that a petition for certiorari, itself an extraordinary remedy, *see In re Ryan G.*, 142 N.H. 643, 645, 707 A.2d 134, 136 (1998), presented an adequate alternative.

The State finally argues that because prior to trial the intervenors' cases were either affirmed or dismissed on appeal to the superior court, or were withdrawn, they lacked standing. We disagree.

Because the intervenors had standing to bring the action at the time they moved to intervene, the State's true objection is that the action was moot at the time of trial. The intervenors argue, however,

that the case should not be dismissed as moot because it "presents a classic situation where the issues are capable of repetition yet evade review." We agree. *See Royer v. State Dep't of Empl. Security*, 118 N.H. 673, 675, 394 A.2d 828, 829 (1978).

 Because the ALS statute normally requires the department to issue its decision from an ALS hearing within sixty-five days after the driver receives a notice of suspension, *see* RSA 265:91-b, I(a), (c), :91-b, III, each individual ALS procedure, and in many cases the suspension itself, *see* RSA 265:91-a, II (minimum suspension of six months), will likely expire prior to the conclusion of any litigation challenging the manner in which the department administered the statute. Moreover, even those intervenors whose license suspensions were upheld after their appeal to the superior court, are subject to enhanced penalties should they again have their licenses suspended. *See* RSA 265:91-a, II(b)(2).

## II. Supervision of Hearings Examiners

The State next argues that the trial court erred by finding that supervision of hearings examiners by the assistant commissioner and the administrator of hearings constituted improper command influence, *ex parte* communications, and rulemaking. While the State acknowledges that hearings examiners are required to be impartial, the State argues that as employees of an administrative agency they are subject to the agency's supervision. The intervenors counter that while the assistant commissioner "may have certain authority to train and supervise the hearings examiners, . . . [h]e cannot police them, he cannot cajole them, he cannot threaten or intimidate them, and he cannot review their findings with an eye towards particular results."

Part I, Article 35 of the New Hampshire Constitution provides in part that "[i]t is the right of every citizen to be tried by judges as impartial as the lot of humanity will admit." This requirement applies to quasi-judicial officers. *See, e.g., Appeal of City of Keene*, 141 N.H. 797, 801, 693 A.2d 412, 415 (1997). "Part I, Article 35 mandates . . . an independent judiciary so that the adjudication of individual controversies is fair and remains uninfluenced by outside forces." *Petition of Mone*, 143 N.H. 128, 137, 719 A.2d 626, 633 (1998). RSA 21-P:5, however, delegates to the assistant commissioner the responsibility of supervising the bureau. Thus, the principal issue raised on appeal is the extent to which the assistant commissioner may exercise supervisory authority in a manner that affects the independence of quasi-judicial hearings examiners.

"A judge is a member of a separate and independent branch of government, bound only to decide cases in accordance with the constitution and laws of New Hampshire and of the United States . . . ." *Appeal of Seacoast Anti-Pollution League*, 125 N.H. 465, 476, 482 A.2d 509, 517 (1984) (Brock, J., concurring specially). The hearings examiners in this case, by contrast, are employees of the department of safety, an executive branch agency, and their "impartiality" must be considered within the context of the policy-making responsibility that officials of the agency, including the assistant commissioner, hold. *See id.*

> A prejudgment or point of view about a question of law or policy, even if so tenaciously held as to suggest a closed mind, is not, without more, a disqualification, nor is a prejudgment about legislative facts that help answer a question of law or policy, nor advance knowledge of adjudicative facts that are in issue, but a prior *commitment* may be.

*Id.* at 476, 482 A.2d at 517-18 (quotation, ellipses, and brackets omitted); *see also N.H. Milk Dealers' Ass'n v. Milk Control Board*, 107 N.H. 335, 339, 222 A.2d 194, 198 (1966).

 On issues of policy and legal interpretation, hearings examiners are subject to the direction of the agency by which they are employed, and their independence is accordingly qualified. *See Nash v. Bowen*, 869 F.2d 675, 680 (2d Cir.), *cert. denied*, 493 U.S. 812 (1989); *Ass'n of Administrative Law Judges v. Heckler*, 594 F. Supp. 1132, 1141 (D.D.C. 1984). Influence ordinarily is not deemed improper unless it is aimed at affecting the outcome of a particular proceeding. *See Sierra Club v. Costle*, 657 F.2d 298, 405-08 (D.C. Cir. 1981); 1 C. KOCH, JR., ADMINISTRATIVE LAW AND PRACTICE § 6.10, at 454 (1985). Thus, the assistant commissioner's "efforts . . . to ensure that [the hearings examiners'] decisions conformed with his interpretation of relevant law and policy were permissible so long as such efforts did not directly interfere with 'live' decisions." *Nash*, 869 F.2d at 680; *cf. Stephens v. Merit Systems Protection Bd.*, 986 F.2d 493, 496 (Fed. Cir. 1993) (allegation that federal administrative law judge required to attend training program was not probative that his impartiality or independence in a *particular case* had been impaired). Where, however, an agency's efforts to direct the quasi-judicial officer's interpretation of law or policy effect substantive changes binding on persons outside the agency, the agency's policy constitutes a "rule" that must be

promulgated pursuant to the APA. *See* RSA 541-A:1, XV; *Petition of Daly*, 129 N.H. 40, 42, 523 A.2d 52, 53 (1986) (decided under prior law); *Petition of Pelletier*, 125 N.H. at 571, 484 A.2d at 1123. With these standards in mind, we address the State's arguments.

The trial court found that the assistant commissioner's binding directives, his reminder that hearings examiners were subject to assignment, his statement in February 1993 that the only option hearings examiners had who disagreed with the department's policies was to resign, and the department's "discipline" of the hearing officer constituted improper influence. The assistant commissioner's instructions, the court found, limited the discretion of hearings examiners, and the "threats" were necessary to insure compliance with the instructions. In consequence, the court found that "in some cases, hearings examiners may have been denied the discretion to interpret the law, apply the law, find facts, govern the scope and conduct of the hearings and to form opinions based on the facts and circumstances of the case before them." The court concluded that the improper influence interfered with the hearings examiner's duty to be impartial, and the intervenors' right to due process.

We agree with the State that the trial court erred in finding that the assistant commissioner's efforts to assure compliance with his directions constituted "improper command influence." None of the instructions were aimed at affecting the outcome of a particular proceeding. Indeed, the trial court explicitly found that "[n]o Hearings Examiner has been ordered to rule a particular way in a particular case by any supervisor." Accordingly, the efforts of the assistant commissioner to insure that the hearings examiners adhered to his interpretation of relevant law and policy cannot be said to have directly interfered with the outcome of a particular proceeding. *See Nash*, 869 F.2d at 680.

 While a generally applicable administrative policy might in effect be aimed at influencing the outcome of individual proceedings, *see Ass'n of Administrative Law Judges*, 594 F. Supp. at 1141-42 (policy of targeting individual administrative law judges for agency review based upon the percentage of cases in which they awarded petitioners social security benefits pressured judges to deny benefits in particular cases); *but see Nash*, 869 F.2d at 681, we conclude that the December 1992 instructions merely circumscribed the discretion of hearings examiners in certain evidentiary and procedural matters. The limitation of discretion does not, alone, constitute the denial of due process, *see United States v. Seluk*, 873 F.2d

15, 16-17 (1st Cir. 1989) (limitation of judicial discretion through federal sentencing guidelines does not violate due process), and may in fact further the due process value of providing consistent treatment to similarly situated individuals, *see id.* at 17; 2 K. DAVIS & R. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 9.10, at 109-13 (3d ed. 1994). Although the trial court found that the assistant commissioner's goal was to simplify the ALS process for non-legally trained police officers, that goal was properly within his policy-making function. *Cf. Appeal of Seacoast Anti-Pollution League*, 125 N.H. at 476, 482 A.2d at 517-18.

 The State also argues that the trial court erred by concluding that the December 1992 instructions and the December 1992 memorandum, together with other similar communications and memoranda, constituted prohibited *ex parte* communications. RSA 541-A:36 (1997) provides in part:

> Unless required for the disposition of ex parte matters authorized by law, officials or employees of an agency assigned to render a decision or to make findings of fact and conclusions of law in a contested case shall not communicate, directly or indirectly, in connection with any issue before the agency, with any person or party, except upon notice and opportunity for all parties to participate.

By its express terms, RSA 541-A:36 applies only to communications by an administrative official "assigned to render a decision or to make findings of fact and conclusions of law *in a contested case.*" RSA 541-A:36 (emphasis added). We decline the intervenors' invitation to interpret the prohibition of *ex parte* communications to apply to communications such as these, which did not concern any particular individual's case. *Cf.* 1 K. DAVIS & R. PIERCE, *supra* § 8.4, at 391 (*ex parte* communications prohibition in federal APA applies only to "contested, material adjudicatory facts").

 We reject the intervenors' argument that due process precluded these "*ex parte*" communications. While we agree that due process requires a quasi-judicial officer "to refrain from *ex parte* communications," *Appeal of Public Serv. Co. of N.H.*, 122 N.H. 1062, 1074, 454 A.2d 435, 442 (1982), the Due Process Clause does not prohibit communications that do not concern adjudicatory facts or the outcome of an adjudicatory proceeding, *see Sierra Club*, 657 F.2d at 405-08.

Finally, the State argues that the trial court erred by finding that the supervision of the assistant commissioner or administrator

constituted rulemaking under the APA. The State has not challenged, however, the trial court's finding that the December 1992 instructions and memorandum were interpreted as "directives." Thus, to the extent that the "directives" bound persons outside the department to substantive changes in "agency polic[ies], procedure[s] or practice requirement[s]," RSA 541-A:1, XV, (b), they fell within the definition of "rule" and were subject to the rulemaking procedures of the APA. *See Petition of Daly*, 129 N.H. at 42, 523 A.2d at 53.

The State cites in particular three examples of statements made by the assistant commissioner that the trial court found to be "rules": (1) the statement that the department was involved in legislative efforts to eliminate the sworn report requirement of the ALS statute; (2) the instruction to keep reports brief and the advice that legislation was pending to eliminate *de novo* review; and (3) the statement that hearings examiners were not to act like judges. While we agree that none of these instructions meet the definition of "rule" pursuant to RSA 541-A:1, the trial court found other instructions from the December 1992 meeting to constitute "rules."

██ The trial court concluded that the assistant commissioner's instruction that "hearsay *shall* be admitted in . . . administrative hearing[s]" constituted a rule. Although a hearings examiner has discretion to admit hearsay, *see* RSA 541-A:33, II (1997); N.H. ADMIN. RULES, Saf-C 203.18, the hearings examiner is not required to admit all proffered hearsay, *see id.* Thus, to the extent that the assistant commissioner instructed the hearings examiners to admit all hearsay notwithstanding, for example, its relevance, the assistant commissioner limited the discretion of hearings examiners in a manner that effected a substantive change in agency policy binding on individuals appearing before the bureau. Accordingly, the trial court did not err in finding that the hearsay instruction constituted a "rule."

██ ██ The trial court also found that the instructions that hearings examiners were to ask questions of police officers to assist them in meeting their burden of proof, and were not to dismiss cases automatically on technical grounds, constituted rules. Although hearings examiners have the authority to ask questions of witnesses, *see* N.H. ADMIN. RULES, Saf-C 203.10(11), the State has identified no requirement that they must exercise such authority to assist a police officer in an ALS hearing. Accordingly, the trial court properly determined that the instruction limited the discretion of hearings examiners in a manner that effected a substantive change

in an agency procedure binding on individuals appearing before the hearings examiners, thereby constituting a "rule." With respect, however, to the instruction that hearings examiners were not to dismiss a proceeding automatically on technical grounds, but were to allow the police officer to proffer the required proof, we note that RSA 541-A:31, IV (1997) provides: "Opportunity *shall be afforded all parties* to respond and present evidence and argument on all issues involved." (Emphasis added.) Moreover, a published rule of the department provides: "No party shall be required to rest his case at a given time, except when a hearings examiner has heard all relevant evidence and rebuttals." N.H. ADMIN. RULES, Saf-C 203.19. Accordingly, the assistant commissioner's instruction that hearings were not to be dismissed automatically, but that further evidence was to be allowed, merely comported with established law, and did not constitute a "rule" within RSA 541-A:1, XV.

Finally, the trial court found that the assistant commissioner's direction that hearings examiners continue any hearing in which a police officer failed to appear and to notify the officer to appear constituted a rule. The statute requires, however, that a case be dismissed and a suspension rescinded if a police officer whose presence is required fails to appear without good cause. *See* RSA 265:91-b, I(c). Moreover, published agency rules require that any party who fails to appear be defaulted absent a showing of good cause. *See* N.H. ADMIN. RULES, Saf-C 203.21, 203.22. Therefore, the assistant commissioner's instruction that hearings examiners were to continue hearings in which a required police officer failed to appear effected a substantive change in agency procedure and bound individuals appearing before the agency. Accordingly, the trial court did not err in finding it to constitute a rule.

*III. Attorney's Fees*

The State finally argues that the trial court erred in awarding attorney's fees. The court awarded fees "because [the intervenors'] legal action ha[d] conferred substantial benefits on themselves and on other drivers who are subject to the ALS procedure." A trial court has discretion to award a prevailing party attorney's fees "where the action conferred a substantial benefit on not only the plaintiffs who initiated the action, but on the public as well." *Claremont School Dist. v. Governor (Costs and Attorney's Fees)*, 144 N.H. 590, 595, 761 A.2d 389, 392 (1999). Because we reverse some of the issues on which the intervenors prevailed below, *cf. Appeal of Brown*, 143 N.H. 112, 121, 720 A.2d 66, 72 (1998), and

because it is unclear what factored into the trial court's finding of "substantial benefits," we vacate the award of attorney's fees.

In conclusion, we reverse the trial court's decree to the extent that it found one of the six intervenors to have standing, and to the extent that it found the remaining intervenors to have standing to challenge the purported rule with respect to the *Hamilton* decision, and the purported rule that hearings examiners were to ignore deficiencies in sworn reports. We vacate the decree to the extent that it found those policies to constitute rules, and to the extent it ordered the State to promulgate the *Hamilton* policy as a rule. We reverse the decree to the extent that it found the State to have engaged in improper command influence and *ex parte* communications. We also reverse the decree to the extent that it found the following policies to constitute rules: (1) the assistant commissioner's advice that the department was attempting through proposed legislation to remove the sworn report requirement; (2) the assistant commissioner's instruction to keep reports brief and advice that legislation was pending to eliminate *de novo* review; (3) the assistant commissioner's statement that hearings examiners were not to act like judges; and (4) the assistant commissioner's instruction not to dismiss cases automatically on technical grounds, but to allow the State to proffer the required proof. We affirm the decree to the extent that it found the following instructions of the assistant commissioner to be rules: (1) hearsay shall be admitted; (2) hearings examiners are to ask questions of police officers to assist them in meeting their burden of proof; and (3) hearings examiners are to continue hearings when a police officer fails to appear and order the officer to appear. We vacate the award of attorney's fees and remand for further proceedings consistent with this opinion.

> *Affirmed in part; reversed in part;*
> *vacated in part; remanded.*

JOHNSON, J., sat for oral argument but retired prior to the final vote; THAYER, J., sat for oral argument but resigned prior to the final vote; BRODERICK, J., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred.